IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FLAGSTONE DEVELOPMENT, LLC, an Arizona limited liability company, and LAWRENCE A. HEATH, | Cause No. CV-08-100-BLG-RFC |
| Plaintiffs, | |
| -vs- | |
| WAYNE JOYNER, JUSTIN JOYNER, as individuals; ROCKY MOUNTAIN TIMBERLANDS, LLC, a Montana limited liability company, WAYNE MARCHWICK, AMERICAN TITLE AND ESCROW, a Montana corporation, FIRST AMERICAN TITLE COMPANY, a California corporation, DEVELOPER FINANCE CORPORATION, a Massachusetts corporation, NICHOLAS POWERS, III, a/k/a NICHOLAS D. POWERS, JAKE KORELL, LANDMARK OF BILLINGS, INC., a Montana corporation, JON USSIN, U BAR S REAL ESTATE, a Montana corporation, and JOHN DOES 11 through 30, | **ORDER** |
| Defendants. | |

Currently pending before the Court is a Motion for Summary Judgment by

Defendants Jake Korell and Landmark of Billings, Inc. (collectively referred to as

Landmark Defendants herein), seeking an order dismissing Counts Four, Seven

and Eight of the Second Amended Complaint.  Plaintiffs do not oppose dismissal of Count Four, which alleges "Negligent Misrepresentation."  Plaintiffs oppose dismissal of Count Seven, alleging "Tortious Interference" and Count Eight, alleging "Conspiracy."

## UNDISPUTED MATERIAL FACTS

Defendant Korell is a real estate agent and broker for Landmark in Billings, Montana.  Defendant Landmark acted as a seller's agent for Defendant Rocky Mountain Timberlands, LLC (RMT), and its agents, Defendants Wayne Joyner and Justin Joyner.  RMT engages in the business of buying and selling large tracts of real estate for development, including a historical cattle ranch about 30 miles north of Billings in Musselshell County, Montana ("30 Mile Ranch").

Plaintiffs Flagstone Development, LLC, an Arizona Limited Liability Company (Flagstone), and the sole managing member of Flagstone, Lawrence Heath (collectively referred to as Flagstone herein), were potential buyers of tracts of land on the 30 Mile Ranch.

RMT and the Flagstone initially entered into a buy-sell Agreement (and addendums) in 2007 for the purchase and sale of a portion of the 30 Mile Ranch. Landmark Defendants did not participate in the negotiations between RMT and Flagstone and did not help write the buy-sell between RMT and Flagstone.

Principal negotiations before and after the signing of the initial buy-sell Agreement, including the negotiations of all of the addendums to the buy-sell, occurred only between RMT and Flagstone.  Heath has admitted that the initial buy-sell left unresolved material elements of the agreement between the parties, necessitating several amendments.  (Defendants' SUF ¶ 3).  Heath also admitted the agreement between RMT and Flagstone was not complete, for lack of agreement on material terms, at that time.  (Defendants' SUF ¶ 3).

RMT had previously completed a sale of another part of the 30 Mile Ranch to Defendant Nicholas D. Powers.  While Flagstone and the RMT Defendants were negotiating the amendments to the buy-sell of the 30 Mile Ranch, Powers' real estate agent contacted Korell to determine whether RMT had any other real estate similar to the property Powers had already purchased from RMT.   Korell contacted RMT and was informed that it appeared to RMT that Flagstone would be unable to perform their obligations under the buy-sell and its amendments.

At the direction of Wayne Joyner, Korell contacted RMT's attorney to determine whether any subsequent sale to Powers would violate any contract between RMT and Flagstone.  Based on Korell's conversation with RMT's attorney, he understood that the agreement between RMT and Flagstone was being

terminated, and that upon the occurrence of that termination, the sale to Powers could continue without legal problems.

RMT terminated the buy-sell and its amendments with Flagstone, and subsequently completed the sale of the 30 Mile Ranch to Powers.

Flagstone filed its Second Amended Complaint and Demand for Jury Trial and asserted claims again Korell and Landmark for negligent misrepresentation (Count Four), tortious interference (Count Seven), and conspiracy (Count Eight). Plaintiff asserts a separate claim for punitive damages against all Defendants in Count Eleven.  Flagstone included a specific claim for damages against Korell under the Montana Real Estate Licensing Act in the prayer for relief.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit

under the governing law.  *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986).

The party moving for summary judgment has the initial burden of showing

the absence of a genuine issue of material fact.  *Anderson*, 477 U.S. at 256-57.

Once the moving party has done so, the burden shifts to the opposing party to set

forth specific facts showing there is a genuine issue for trial.  *In re Barboza*, 545

F.3d 702, 707 (9th Cir. 2008).  The nonmoving party "may not rely on denials in

the pleadings but must produce specific evidence, through affidavits or admissible

discovery material, to show that the dispute exists."  *Id.*

On summary judgment, the evidence must be viewed in the light most

favorable to the non-moving party.  *Id.*  The court should not weigh the evidence

and determine the truth of the matter, but determine whether there is a genuine

issue for trial.  *Anderson,* 477 U.S. at 249.

## ANALYSIS

### I.    Negligent Misrepresentation (Count Four)

Plaintiffs do not oppose dismissal of Count Four and dismissal is

appropriate.

## II.     Tortious Interference (Count Seven)

A plaintiff alleging tortious interference with a contract must prove that the

defendant's acts:

> 1) were intentional and willful; 2) were calculated to cause
> damage to the plaintiff in his or her business; 3) were done
> with the unlawful purpose of causing damage or loss,
> without right or justifiable cause on the part of the actor;
> and 4) that actual damages and loss resulted.

*Emmerson v. Walker*, 2010 MT 167, ¶ 23, 298 Mont. 213, 994 P.2d 1124, citing

*Hardy v. Vision Serv. Plan*, 2005 MT 232, ¶ 18, 328 Mont. 385, 120 P.2d 402.

These elements are the same as those analyzed in the related tort of

intentional interference with prospective economic advantage.  *Maloney v. Home

Investment Center, Inc.*, 2000 MT 34, ¶ 42, 298 Mont. 213, 994 P.2d 1124.  The

Montana Supreme Court has explained that intentional interference with

prospective economic advantage and tortious interference with a contract are

essentially the same four element, but differ in character:

> The key difference between the two tort theories is that
> unlike interference with contractual relations, intentional
> interference with either "business relations" or "prospective
> economic advantage" does not require that a contract exist
> between any of the involved parties.  Rather, the focus of
> the legal inquiry is on the intentional acts of the "malicious
> interloper" in disrupting a business relationship.

*Id.*

Tortious interference with a contract requires a contract between Plaintiff and Defendant and tortious interference with an economic advantage requires action by a malicious interloper. *Id.* In this case, Landmark and Korell were not parties to the buy-sell agreement. Therefore, the applicable "interference" tort is "intentional interference with prospective economic advantage," which includes the element of malicious action. *Maloney*, ¶ 34.

### A.    Was there a Malicious Intentional Act?

The Montana Supreme Court has held that a plaintiff cannot prove malice based on otherwise legal actions of a defendant, and that summary judgment is appropriate in those instances. *Pospisil v. First National Bank of Lewistown*, 2001 MT 286, ¶ 20, 307 Mont. 392, 37 P.3d 704. In *Pospisil*, the Court considered whether liability existed under a theory of tortious interference with business relations when the defendant's acts were otherwise expressly legal, specifically acts of mortgaging property in which plaintiff and defendant both had an interest. *Id.*, ¶ 8. Because that act was expressly allowed by law, and because no other factual information on the record showed any wrongful or malicious intent, no presumption or possible conclusion of malice exists, and summary judgment for defendant on the issue of tortious interference was appropriate. *Id.*, ¶ 21.

Federal Courts in Montana have also recognized that otherwise legal action, taken for legitimate business reason, cannot substantiate liability for tortious interference. *Statewide Rent-a-Car, Inc. v. Subaru of America*, 704 F.Supp.183, 186 (D. Mont. 1988). In *Statewide*, the court dismissed the plaintiff's claim of tortious interference because the actions of the defendant had been otherwise legal and allowed by law.

Plaintiffs have only used otherwise legal action to show malice. Korell and Landmark engaged in actions authorized by statute and administrative rule, namely the representation of a seller by a seller's real estate agent. Mont. Code Ann. § 37-51-313. Landmark Defendants' actions here were proper and legal. Korell passed along information from Powers, a person interested in seeing if RMT had any property for sale. Korell went further and contacted RMT's attorney to make sure that a sale to Powers of the 30 Mile Ranch property would occur only after termination of any agreement between RMT and Flagstone. (Defendants' SUF ¶ 3). This behavior was appropriate and does not have any indication of malice and without malice, the claim of tortious interference must fail.

### B.    Were Defendants' Acts Calculated to Cause Damage to Plaintiff in his or her Business?

Similar to malice, Landmark Defendants' had a good faith rationale for otherwise legal actions which constitute the allegedly tortious interference.  *See Grenfell v. Anderson*, 2002 MT 225, ¶ 75, 311 Mont.  385, 56 P.3d 326.

Landmark Defendants acted as seller's agents and when they became aware of an offer on a parcel of the seller's land, they passed the information on to the seller.  Landmark Defendants took steps to ensure that any subsequent acceptance of this offer would be legal by consulting with counsel.  At the time of the offer, RMT was losing approximately $70,000 per month in interest payments.  The sale of the property to Powers ended that expense to RMT.  These actions were not calculated to harm Flagstone, but were intended to aid RMT Defendants.  This was an otherwise legal act conducted in good faith.

### C.    Were Defendants' Acts Done with the Unlawful Purpose of Causing Damage or Loss, Without Right or Justifiable Cause on the Part of the Actor?

To determine whether a defendant's actions were improper or done with the unlawful purpose of causing damage or loss, or without right or justifiable cause, Montana employs § 767 of the *Restatement (Second) of Torts* (1979).  Section 767 sets forth a factors test to "evaluate the propriety of the challenged actions."

(a) the nature of the actor's conduct,
(b) the nature of the expectancy with which his conduct interferes,
(c) the relations between the parties,
(d) the interest sought to be advanced by the actor and
(e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand.

*Restatement (Second) of Torts* § 767.

When considering the Restatement factors, the Court must take into account the duties imposed upon real estate professionals. The Montana Supreme Court has combined the analysis of all the factors to be considered in determining the propriety of a defendant's action in a claim of tortious interference, into an analysis of malice. *See Popisil*, ¶ 21. If otherwise lawful acts show that there was no malicious or wrongful intent or purpose, there can be no liability for tortious interference. *Id*.

As discussed *supra*, Landmark Defendants acted with a lawful purpose, without malice. Korell advised the RMT Defendants that Powers was interested in purchasing property and took steps to make sure that sale of the 30 Mile Ranch to an alternate purchaser would not offend the existing contract. Landmark Defendants were acting to assist RMT to get out from under the monthly interest expense of $70,000, which is a proper action by a seller's agent in the best interest of a seller.

-10-

### III.   Conspiracy (Count Eight)

The Montana Supreme Court has held:

> A common law conspiracy occurs in Montana when a
> combination of two or more persons who, by some
> concerted action, intend to accomplish some unlawful object
> for the purpose of harming another which results in damage.
> We also have established that it is not the conspiracy itself,
> but the torts committed or the wrong done in the furtherance
> of the conspiracy that give rise to a conspiracy claim.

*Jones v. Montana University System*, 2007 MT 82, ¶ 44, 337 Mont.  1, 155 P.3d

1247 (internal citations omitted).  Therefore, to be actionable, an alleged

conspiracy must be toward an unlawful end.  *Id.*

### A.   Was there a Conspiracy Between Landmark Dependants and RMT?

Civil conspiracy cannot exist between a principal and an agent.  A principal

and his agent are indistinct and the acts of the agent are deemed to be the acts of

the principal.  C.J.S. Conspiracy § 10 ("The identity between an agent and

principal leads to a legal impossibility in the context of conspiracy.")

Landmark Defendants were following their obligations as agents and acting

toward the interests of their principal RMT.  Working toward the sale of land is

precisely what a seller's agent does in their regular course of business.  That is not

an actionable wrongful act.

## IV.   Punitive Damages

If a party has no liability, damages cannot be granted against that party.  *H-D Irrigating, Inc. v. Kimble Properties, Inc.*, 2000 MT 212, ¶ 47, 301 Mont. 34, 8 P.3d 95.  Punitive damages against Landmark Defendants are not appropriate because no liability exists.

## CONCLUSION

It is hereby ordered that the Motion for Summary Judgment by Jake Korell and Landmark of Billings, Inc. [Doc. #192] is **GRANTED**.

DATED this 28th Day of September, 2011.

/s/ Richard F. Cebull_____
RICHARD F.  CEBULL
U.S. District Court Judge