IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FLAGSTONE DEVELOPMENT, LLC, an Arizona limited liability company, and LAWRENCE A. HEATH,<br><br>                              Plaintiffs,<br><br>     -vs-<br><br>WAYNE JOYNER, JUSTIN JOYNER, as individuals; ROCKY MOUNTAIN TIMBERLANDS, LLC, a Montana limited liability company, WAYNE MARCHWICK, AMERICAN TITLE AND ESCROW, a Montana corporation, FIRST AMERICAN TITLE COMPANY, a California corporation, DEVELOPER FINANCE CORPORATION, a Massachusetts corporation, NICHOLAS POWERS, III, a/k/a NICHOLAS D. POWERS, JAKE KORELL, LANDMARK OF BILLINGS, INC., a Montana corporation, JON USSIN, U BAR S REAL ESTATE, a Montana corporation, and JOHN DOES 11 through 30,<br><br>                              Defendants. | Cause No. CV-08-100-BLG-RFC<br><br><br><br><br><br>**ORDER GRANTING AMERICAN TITLE AND ESCROW'S MOTION FOR SUMMARY JUDGMENT** |

Currently pending before the Court is Defendant American Title and Escrow's Motion for Summary Judgment on all Claims. Defendant American Title and Escrow specifically seeks dismissal of Count Five (Negligence); Count Seven (Tortious Interference); and Count Eight (Conspiracy).

## UNDISPUTED MATERIAL FACTS

Plaintiffs are Flagstone Development Co., LLC, and Lawrence A. Heath, citizens of Arizona. Defendant Rocky Mountain Timberlands, LLC, is a Montana Corporation which owned real property in Mussellshell County, Montana. On May 25, 2007, Flagstone entered into a land Buy-Sell agreement with Rocky Mountain Timberlands (RMT) for approximately 13,000 acres in Mussellshell County. Flagstone and RMT entered into several separate addendums to the Buy-Sell.

On July 23, 2007, and pursuant to the Flagstone/RMT Buy-Sell, American Title received in escrow a $100,000 wire transfer from Flagstone. On July 24, 2007, American Title opened an interest-bearing account at First Interstate Bank for Flagstone with a deposit of $100,000.

On July 27, 2007, American Title issued a Preliminary Title Commitment to Flagstone. Contained within the Preliminary Title Commitment was a "Privacy Policy Statement," providing: "We request information from you for our own

legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested for us; or (2) as permitted by law." Doc. 216, Ex. "E".

Under the "Confidentiality and Security" section of the "Privacy Policy Statement," it was disclosed to Flagstone: "We will use our best efforts to ensure that no unauthorized parties have access to any of your information.  We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products to you. . ." *Id.*

After opening the $100,000 escrow account, Flagstone and RMT agreed to several releases of escrow funds for certain disbursements.  Based on Flagstone and RMT's agreement, which was required pursuant to the subject Buy-Sell, American Title released the requested escrow funds.  *See* Doc. 76.

After the earnest money escrow was set up pursuant to the terms of the Flagstone/RMT Buy-Sell, there were several problems with the proposed sale of property.  Road construction cost tripled, water was not accessible, and the real estate market worsened.  Flagstone requested material revisions to the original Flagstone/Heath contract including "seller carry back financing," "price concession" and "Wayne Joyner's personal guaranty."  Doc. 216, Ex. "M".

Flagstone's attorney represented: "At this point, however, because of the size of the unexpected expenses, the whole deal may need to be reworked" and "[i]f this meeting and a restructured deal does not happen, a cease and desist demand will be served." *Id*. Larry Heath also sent several emails discussing the problems. Doc. 216, Exs. "J", "K" and "L".

On February 21, 2008, RMT entered into a back-up offer with Co-Defendant Nicholas Powers III for the purchase and sale of a portion of the 30 Mile Ranch. One of the stated contingencies between the parties was "Subject to release of Heath contract." Doc. 216, Ex. "F".

On February 25, 2008, a request was made for American Title to issue a Preliminary Title Commitment and open an escrow for the RMT/Powers back-up offer. On March 6, 2008, American Title issued a Preliminary Title Commitment to Nicholas Powers III. Contained within the Powers Preliminary Title Commitment was the identical "Privacy Policy Statement" that was issued to Flagstone and any other customer of American Title. Doc. 216, Ex. "H".

RMT sent a "Notice of Termination" on April 3, 2008 and proceeded with closing on the Powers/RMT Buy-Sell on April 4, 2008.

At closing, both parties to the Powers/RMT Buy-Sell waived the "release of Heath contract" contingency at closing. Because it was represented to American

Title that the Flagstone/RMT contract was terminated, but the official document had not been received at the time of closing, in addition to requiring the parties to the Powers/RMT transaction to waive the "Heath contingency," American Title also obtained an "Indemnity Agreement" from RMT.

No deeds or exclusive options to purchase in favor of Flagstone were placed in escrow. No documentation exists demonstrating the Flagstone/RMT Buy-Sell was an exclusive offer or premised upon a granted option or right of first refusal.

At the commencement of this action, American Title asserted interpleader claims against Flagstone and RMT in relation to dispersal of the remaining escrow funds. Per stipulation, American Title, Flagstone and RMT agreed to tender the principal remaining balance of $68,381.99 to "Flagstone Development, LLC c/o Michael Coil, Esq."

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving

party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## ANALYSIS

### A. Tortious Interference

In order to prevail on a claim of tortious interference with contract claim, a plaintiff must demonstrate a defendant's actions: (1) were intentional and willful; (2) were calculated to cause damage to the plaintiff in his or her business; (3) were done with the unlawful purpose of causing damage or loss, without right or

justifiable cause on the part of the actor; and (4) that actual damages and loss resulted. *Emmerson v. Walker*, 2010 MT 167, ¶ 23, 236 P.3d 598. An obvious prerequisite to a tortious interference with contract claim is the existence of a valid contract. *Dahood v. McDonald*, 140 Mont. 453, 456-57, 372 P.2d 928 (1962).

A contract is treated as rescinded when the parties' conduct clearly and unequivocally evidences their intent to abandon the contract. *Forsyth v. Pendelton*, 617 P.2d 358, 361 (Utah 1980). Although normally a question of fact, rescission may be found as a matter of law when the parties' intent to abandon is sufficiently unambiguous. *General Mortg. Corp. v. Peacock*, 594 S.W.2d 35 (Ark. Ct. App. 1980).

There is sufficient evidence in this case to demonstrate abandonment. Flagstone, by and through its principal Larry Heath, realized that there were several problems with the proposed sale of land and clearly and unequivocally evidenced an intent to abandon the contract.

First, Heath stated in an email, "the number aren't working out for [Flagstone's] cash flow model." Doc. 216, Ex. "I". Specifically, with regard to county road requirements, Heath stated, "[t]his triples the road construction costs of the planned development and makes the project economically unfeasible." Doc. 216, Ex. "J".

Second, based upon his recognition that the project was "economically unfeasible," Heath stated to at least two of his third-party investors:

> As you know, the real estate market has worsened considerably since we last discussed my project in Montana. Partially as a result of this, I am in the process of extracting myself from the transaction. Fortunately it appears I will be able to get out of this deal with my pursuit costs reimbursed. My plan is to let the market recover to the point where second home properties are in vogue and put together another ranch development.

Doc. 216, Exs. "K" and "L".

Third, and also of great significance is the fact that it was represented through counsel that Flagstone would only proceed if RMT agreed to a new material term in the Buy-Sell Agreement including additional financing obligations and price concessions. Doc. 216, Ex. "M". Flagstone's attorney stated: "because of the size of the unexpected expenses, the whole deal may need to be reworked" and insisted upon a "restructured deal" or a "cease and desist demand" would be issued. *Id.*

RMT was unwilling to agree to Flagstone's material revisions in the form of a new Buy-Sell or fourth addendum. Flagstone has conceded it would not perform until new material terms were incorporated in a new Buy-Sell or addendum. Doc. 216, Exs. "N". RMT elected to terminate and/or rescind the Flagstone/RMT Buy-Sell and close with Nicholas Powers.

Flagstone and RMT's representations and conduct unambiguously revealed the material terms contained in the Buy-Sell were rescinded and/or abandoned. Because there was not a valid contract in existence, the tortious interference contract claim fails.

B.   **Negligence**

In order to establish a prima facie case of negligence against a title company, a plaintiff is required to present expert testimony as to the standard of care. *Doble v. Lincoln County Title Co.*, 215 Mont. 1, 692 P.2d 1267 (1985). Actionable negligence arises from a breach of legal duty and whether a legal duty is owed from one party to another is a question of law for the Court. *Nautilus Ins. Co. v. First Nat. Ins.*, 254 Mont. 296, 837 P.2d 409 (1992).

An escrow agent owes fiduciary duties to the parties to the escrow agreement. *Dulan v. Montana National Bank of Roundup*, 203 Mont. 177, 182, 661 P.2d 28 (1983). These fiduciary duties are "narrowly defined by law." *Brandt v. Sande*, 2000 MT 98, ¶ 28, 1 P.3d 929. "An agent is bound to comply only with the instructions of the parties to the escrow agreement and may not exceed this authority." *Id.* at ¶ 29; *see also First Fidelity v. Mathews*, 214 Mont. 323, 692 P.2d 1255 (1984); and *Turbiville v. Hansen*, 233 Mont. 487, 761 P.2d 389 (1988).

The written escrow instructions in this case originated from Flagstone and RMT and came in the form of the Buy-Sell Agreement and Addendums.  A specific escrow agreement was not provided to American Title.  The escrow instructions provided that American Title was to receive $100,000.00 in earnest money deposit and obtain consent prior to distribution of funds necessary for preliminary plat approval.  American Title complied with the instructions and an interpleader action was commenced.  The parties stipulated to the release of the remaining funds and an Order dismissing claims relating to release and entitlement to the escrow funds was issued.

Flagstone argues that the claims against American Title stem from their decision to "assist, facilitate and conceal Defendant Wayne Joyner's sale" of the subject property to Nicholas Powers.  Contrary to Plaintiffs' assertions, Montana law did not require American Title to intervene in the disputes between Flagstone and RMT.  American Title had no duty to independently investigate the legal significance of every disclosed fact.  There was no escrow agreement instructing American Title to disclose adverse information or instructions preventing the opening and closing of a back-up offer.

American Title relied upon the representations made by RMT that the Flagstone/RMT Buy-Sell was terminated and acted accordingly.  American Title

obtained waivers of contingencies and indemnification if there was a resulting dispute.  American Title was under no obligation to determine the legal sufficiency of RMT's Notice of Termination, nor was it under any obligation to further investigate if proceeding with the Powers sale was legally justified.

The only legal duty imposed on American Title was strictly adhering to the written escrow instructions provided by Flagstone and RMT.  American Title fulfilled those duties.

### C.    Conspiracy

A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means.  15A C.J.S. Conspiracy § 1(1).

The elements of civil conspiracy are: "(1) two or more persons . . .(2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages at the proximate result thereof." *Schumacker v. Meridian Oil Co.*, 1998 MT 79, ¶ 18, 956 P.2d 1370.

"[I]t is not really the conspiracy which gives rise to a right of action, but the torts which may be committed in furtherance thereof." *Duffy v. Butte Teachers' Union, No.  332, AFL-CIO*, 168 Mont. 246, 251, 541 P.2d 1199 (1975) citation

omitted.  In 15A C.J.S. Conspiracy § 2, it is further noted that if the object of an alleged 'conspiracy' is lawful, and the means used to attain that object are lawful, there can be no civil action for conspiracy.  The foregoing is true even though damage may result to the plaintiffs and even though defendants may have acted with a malicious motive.  If such were not the rule, obviously many purely business dealings would give rise to an action in tort on behalf of one who may have been adversely affected.  *Duffy*, 168 Mont.  246, 251, 541 P.2d 1199.

Because Flagstone cannot sustain its underlying negligence and tortious interference claims against American Title, the claim of civil conspiracy must also fail.

### D.    Punitive Damages

Without viable claims, punitive damages are not appropriate.  *See H-D Irrigating, Inc. v. Kimble Properties, Inc.,* 2000 MT 212, ¶ 47, 8 P.3d 95.

### CONCLUSION

Therefore, IT IS HEREBY ORDERED that the Motion for Summary Judgment by Defendant American Title and Escrow [Doc.  214] is **GRANTED**.

The Clerk of Court is directed to terminate American Title and Escrow as a party and **MOOT** the Motion to Strike Don Eilbott's Affidavit [Doc.  266];

Motion for Determination of Plaintiffs' Privilege Claims [Doc. 200]; and

Defendant American Title and Escrow's Motion to Compel [Doc. 220].

DATED this 3rd day of November, 2011.

> _/s/ Richard F. Cebull_____
> RICHARD F. CEBULL
> U.S. DISTRICT COURT JUDGE