# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| FLAGSTONE DEVELOPMENT, LLC, an Arizona limited liability company, and LAWRENCE A. HEATH,<br><br>Plaintiffs,<br><br>-vs-<br><br>WAYNE JOYNER, JUSTIN JOYNER, as individuals; ROCKY MOUNTAIN TIMBERLANDS, LLC, a Montana limited liability company, WAYNE MARCHWICK, AMERICAN TITLE AND ESCROW, a Montana corporation, FIRST AMERICAN TITLE COMPANY, a California corporation, DEVELOPER FINANCE CORPORATION, a Massachusetts corporation, NICHOLAS POWERS, III, a/k/a NICHOLAS D. POWERS, JAKE KORELL, LANDMARK OF BILLINGS, INC., a Montana corporation, JON USSIN, U BAR S REAL ESTATE, a Montana corporation, and JOHN DOES 11 through 30,<br><br>Defendants. | Cause No. CV-08-100-BLG-RFC<br><br><br><br>**ORDER GRANTING WAYNE JOYNER, JUSTIN JOYNER AND ROCKY MOUNTAIN TIMBERLAND'S MOTION FOR SUMMARY JUDGMENT** |

Currently before the Court a Motion for Summary Judgment by Defendants Wayne Joyner, Justin Joyner, and Rocky Mountain Timberlands.

## BACKGROUND

Plaintiffs are Flagstone Development Co., LLC, and Lawrence A. Heath, citizens of Arizona. Defendant Rocky Mountain Timberlands, LLC, is a Montana Corporation which owned real property in Mussellshell County, Montana. On May 25, 2007, Flagstone entered into a land Buy-Sell agreement with Rocky Mountain Timberlands (RMT) for approximately 13,000 acres in Mussellshell County. Flagstone and RMT entered into several separate addendums to the Buy-Sell.

There is no dispute that there were several problems with the proposed sale of property to Flagstone. Road construction costs increased, water was not accessible, and the real estate market worsened. Flagstone requested material revisions to the original Flagstone/Heath contract including "seller carry back financing," "price concession" and "Wayne Joyner's personal guaranty." Doc. 216, Ex. "M". Flagstone's attorney represented: "At this point, however, because of the size of the unexpected expenses, the whole deal may need to be reworked" and "[i]f this meeting and a restructured deal does not happen, a cease and desist demand will be served." *Id*. Larry Heath also sent several emails discussing the

problems and acknowledged the problems in his deposition.  Doc. 216, Exs. "J", "K" and "L"; Doc. 194, Ex. "A".

Heath's summary of the problems facing the project are set forth in his deposition.

> Q. Because you weren't going to go with the deal as it was written.  You couldn't, right?
> A. I could have gone with the deal as it was written if they would have adhered to the terms of the deal as it was written.  But in light of the surprises that were impacting the number of lots, the accessibility of water, the cost of road construction, and other issues, it was something needed to give in order to make the project economically feasible for an investor or lender to support the purchase.
> Q. So you were waiting on this fourth addendum, or a new contract?
> A. Yes.
> Q. And it never came?
> A. Yes.

Heath depo. p. 135, l. 17 to p. 136, l. 8.

On February 21, 2008, RMT entered into a back-up offer with Co-Defendant Nicholas Powers III for the purchase and sale of a portion of the 30 Mile Ranch.  RMT sent a "Notice of Termination" on April 3, 2008 and proceeded with closing on the Powers/RMT Buy-Sell on April 4, 2008.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## ANALYSIS

**1.     The Contract was Rescinded or Abandoned**

A contract is treated as rescinded when the parties' conduct clearly and unequivocally evidences their intent to abandon the contract. *Forsyth v. Pendelton*, 617 P.2d 358, 361 (Utah 1980). Although normally a question of fact, rescission may be found as a matter of law when the parties' intent to abandon is sufficiently unambiguous. *General Mortg. Corp. v. Peacock*, 594 S.W.2d 35 (Ark. Ct. App. 1980).

There is sufficient evidence in this case to demonstrate abandonment. Flagstone, by and through its principal Larry Heath, realized that there were several problems with the proposed sale of land and clearly and unequivocally evidenced an intent to abandon the contract.

First, Heath stated in an email, "the number aren't working out for [Flagstone's] cash flow model." Doc. 216, Ex. "I". Specifically, with regard to county road requirements, Heath stated, "[t]his triples the road construction costs of the planned development and makes the project economically unfeasible." Doc. 216, Ex. "J".

Second, based upon his recognition that the project was "economically unfeasible," Heath stated to at least two of his third-party investors:

> As you know, the real estate market has worsened considerably since we last discussed my project in Montana. Partially as a result of this, I am in the process of extracting myself from the transaction. Fortunately it appears I will be able to get out of this deal with my pursuit costs reimbursed. My plan is to let the market recover to the point where second home properties are in vogue and put together another ranch development.

Doc. 216, Exs. "K" and "L".

Third, and also of great significance is the fact that it was represented through counsel that Flagstone would only proceed if RMT agreed to a new material term in the Buy-Sell Agreement including additional financing obligations and price concessions. Doc. 216, Ex. "M". Flagstone's attorney stated: "because of the size of the unexpected expenses, the whole deal may need to be reworked" and insisted upon a "restructured deal" or a "cease and desist demand" would be issued. *Id.*

RMT was unwilling to agree to Flagstone's material revisions in the form of a new Buy-Sell or fourth addendum. Flagstone has conceded it would not perform until new material terms were incorporated in a new Buy-Sell or addendum. Doc. 216, Exs. "N"; Heath depo. p. 135, l. 17 to p. 136, l. 8. RMT elected to terminate and/or rescind the Flagstone/RMT Buy-Sell and close with Nicholas Powers. Flagstone and RMT's representations and conduct

unambiguously revealed the material terms contained in the Buy-Sell were rescinded and/or abandoned.

### 2. Specific Performance is not an Available Remedy

In order to establish a claim for specific performance of a real estate contract, the party seeking specific performance must allege and prove that plaintiff was a ready, willing and able buyer, even when the vendor has allegedly failed to perform or meet a condition. *Jaramillo v. Case*, 100 Conn.App. 815, 919 A.2d 1061 (Conn.App. 2007). A purchaser who seeks specific performance of a contract for the sale of real property must demonstrate that he or she was ready, willing, and able to perform the contract, regardless of any anticipatory breach by a seller. *Friedman v. Kucher*, 34 A.D.3d 726, 826 N.Y.S.2d 104, 106 (N.Y.A.D. 2 Dept., 2006). In order to be entitled to specific performance of a contract, a plaintiff must demonstrate that it was ready, willing, and able to perform its obligations thereunder regardless of a defendant's anticipatory breach. *Island Auto Seat Cover Co., Inc. v. Minunni,* 69 A.D.3d 570, 572, 892 N.Y.2d 189, 191 (N.Y.A.D. 2 Dept., 2010).

There is no doubt that because of the significant change in circumstances surrounding the sale of the property, the project was impacted financially and Plaintiffs state in their Second Amended Complaint "Plaintiffs' construction

budget was rendered ineffective and Plaintiffs' access to equity capital was fatally affected." Second Amended Complaint, Doc. 33, ¶ 28. Because of this, Flagstone has conceded it was not a ready, willing and able buyer.

Heath's argument that the parties had agreed to an entire contract is not persuasive. Montana law has clearly established there is no such thing as an enforceable agreement to agree. *GRB Farm v. Christman Ranch, Inc.*, 2005 MT 59, ¶¶ 11-14, 326 Mont. 236, 108 P.3d 507.

## CONCLUSION

The entire transaction in this case was fatally flawed and a new contract would have been needed to make the sale occur. Specific performance is not an appropriate remedy because Flagstone was not a ready, willing and able buyer and there is no such thing as an enforceable agreement to agree. Without a valid contract in existence, the claims against Wayne Joyner, Justin Joyner and Rocky Mountain Timberlands fail.

Defendant Wayne Joyner, Justin Joyner, and Rocky Mountain Timberlands' Motion for Summary Judgment [Doc. 190] is **GRANTED**. The Clerk of Court is directed to **MOOT** Defendant Justin Joyner's Individual Motion for Summary Judgment [Doc. 188].

///

DATED this 7th day of November, 2011.

                                                    */s/ Richard F. Cebull*_____
                                                    RICHARD F. CEBULL
                                                    U.S. DISTRICT COURT JUDGE