IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FLAGSTONE DEVELOPMENT, LLC, an Arizona limited liability company, and LAWRENCE A. HEATH,

Plaintiffs,

-vs-

WAYNE JOYNER, JUSTIN JOYNER, as individuals; ROCKY MOUNTAIN TIMBERLANDS, LLC, a Montana limited liability company, WAYNE MARCHWICK, AMERICAN TITLE AND ESCROW, a Montana corporation, FIRST AMERICAN TITLE COMPANY, a California corporation, DEVELOPER FINANCE CORPORATION, a Massachusetts corporation, NICHOLAS POWERS, III, a/k/a NICHOLAS D. POWERS, JAKE KORELL, LANDMARK OF BILLINGS, INC., a Montana corporation, JON USSIN, U BAR S REAL ESTATE, a Montana corporation, and JOHN DOES 11 through 30,

Defendants.

Cause No. CV-08-100-BLG-RFC

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**

Currently before the Court is a Motion for Summary Judgment Jon Ussin d/b/a U Bar S Real Estate. Defendant Nicholas Powers III joins in the motion.

## BACKGROUND

Plaintiffs are Flagstone Development Co., LLC, and Lawrence A. Heath, citizens of Arizona. Defendant Rocky Mountain Timberlands, LLC, is a Montana Corporation which owned real property in Mussellshell County, Montana. On May 25, 2007, Flagstone entered into a land Buy-Sell agreement with Rocky Mountain Timberlands (RMT) for approximately 13,000 acres in Mussellshell County. Flagstone and RMT entered into several separate addendums to the Buy-Sell.

There is no dispute that there were several problems with the proposed sale of property to Flagstone. Road construction costs increased, water was not accessible, and the real estate market worsened.

On February 21, 2008, RMT entered into a back-up offer with Defendant Nicholas Powers III for the purchase and sale of a portion of the 30 Mile Ranch. Powers' agent at the time was Jon Ussin d/b/a U Bar S Real Estate. RMT sent a "Notice of Termination" to Flagstone on April 3, 2008 and proceeded with closing on the Powers/RMT Buy-Sell on April 4, 2008.

Plaintiffs' Second Amended Complaint alleges that Jon Ussin committed tortious interference with contract and civil conspiracy when he assisted Nicholas Powers with the purchase of land from RMT.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact.  *Anderson*, 477 U.S. at 256-57.  Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Id.*  The court should not weigh the evidence

and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

**I. Tortious Interference**

A plaintiff alleging tortious interference with a contract must prove that the defendant's acts:

> 1) were intentional and willful; 2) were calculated to cause damage to the plaintiff in his or her business; 3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and 4) that actual damages and loss resulted.

*Emmerson v. Walker*, 2010 MT 167, ¶ 23, 298 Mont. 213, 994 P.2d 1124, citing *Hardy v. Vision Serv. Plan*, 2005 MT 232, ¶ 18, 328 Mont. 385, 120 P.2d 402.

These elements are the same as those analyzed in the related tort of intentional interference with prospective economic advantage. *Maloney v. Home Investment Center, Inc.*, 2000 MT 34, ¶ 42, 298 Mont. 213, 994 P.2d 1124. The Montana Supreme Court has explained that intentional interference with prospective economic advantage and tortious interference with a contract are essentially the same four elements, but differ in character:

> The key difference between the two tort theories is that unlike interference with contractual relations, intentional interference with either "business relations" or "prospective economic advantage" does not require that a contract exist

> between any of the involved parties. Rather, the focus of the legal inquiry is on the intentional acts of the "malicious interloper" in disrupting a business relationship.

*Id.*

Tortious interference with a contract requires a contract between plaintiff and defendant and tortious interference with an economic advantage requires action by a malicious interloper. *Id.* In this case, Nicholas Powers, Jon Ussin and U Bar S Real Estate were not parties to the Flagstone/RMT buy-sell agreement. Therefore, the applicable "interference" tort is "intentional interference with prospective economic advantage," which includes the element of malicious action. *Maloney*, ¶ 34.

**A. Was there a Malicious Intentional Act?**

The Montana Supreme Court has held that a plaintiff cannot prove malice based on otherwise legal actions of a defendant, and that summary judgment is appropriate in those instances. *Pospisil v. First National Bank of Lewistown*, 2001 MT 286, ¶ 20, 307 Mont. 392, 37 P.3d 704. In *Pospisil*, the Court considered whether liability existed under a theory of tortious interference with business relations when the defendant's acts were otherwise expressly legal, specifically acts of mortgaging property in which plaintiff and defendant both had an interest.

*Id.*, ¶ 8.  Because that act was expressly allowed by law, and because no other factual information on the record showed any wrongful or malicious intent, no presumption or possible conclusion of malice exists, and summary judgment for defendant on the issue of tortious interference was appropriate.  *Id.*, ¶ 21.

Federal Courts in Montana have also recognized that otherwise legal action, taken for legitimate business reason, cannot substantiate liability for tortious interference.  *Statewide Rent-a-Car, Inc. v. Subaru of America*, 704 F.Supp.183, 186 (D. Mont. 1988).  In *Statewide*, the court dismissed the plaintiff's claim of tortious interference because the actions of the defendant had been otherwise legal and allowed by law.

Plaintiffs have only used otherwise legal action to show malice.  The undisputed facts show Powers and Ussin worked together to accomplish the purchase of RMT's property.  The action of placing a backup offer for the purchase of a property and going through with the purchase when all of the conditions placed by both parties are satisfied or waived is completely legal and allowed by law.  This behavior was appropriate and does not have any indication of malice.  Without malice, the claim of tortious interference must fail.

### B. Were Defendants' Acts Calculated to Cause Damage to Plaintiff in his or her Business?

Nicholas Powers, Jon Ussin and U Bar S Real Estate had a good faith rationale for otherwise legal actions which constitute the allegedly tortious interference. *See Grenfell v. Anderson*, 2002 MT 225, ¶ 75, 311 Mont. 385, 56 P.3d 326.

Jon Ussin acted as the buyer's agent and when he and Nicholas Powers became aware that RMT had property available for purchase, they worked together to accomplish the purchase of the property. At the closing, Powers and Ussin were advised that all of the conditions required in the buy/sell had been met, including RMT's condition of release of the "Heath" contract. These actions were not calculated to cause damage to Plaintiff, but were intended to aid Ussin and Powers. This was a business transaction conducted in good faith.

### C. Were Defendants' Acts Done with the Unlawful Purpose of Causing Damage or Loss, Without Right or Justifiable Cause on the Part of the Actor?

To determine whether a defendant's actions were improper or done with the unlawful purpose of causing damage or loss, or without right or justifiable cause, Montana employs § 767 of the *Restatement (Second) of Torts* (1979). Section 767 sets forth a factors test to "evaluate the propriety of the challenged actions."

> (a) the nature of the actor's conduct,
> (b) the nature of the expectancy with which his conduct interferes,
> (c) the relations between the parties,
> (d) the interest sought to be advanced by the actor and
> (e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand.

*Restatement (Second) of Torts* § 767.

When considering the Restatement factors, the Court must take into account the duties imposed upon real estate professionals. The Montana Supreme Court has combined the analysis of all the factors to be considered in determining the propriety of a defendant's action in a claim of tortious interference, into an analysis of malice. *See Popisil*, ¶ 21. If otherwise lawful acts show that there was no malicious or wrongful intent or purpose, there can be no liability for tortious interference. *Id*.

As discussed *supra*, Ussin and Powers acted with a lawful purpose, without malice. Powers was interested in purchasing property from RMT. Ussin and Powers worked together to accomplish the purchase of the property. At the closing, Powers and Ussin were advised that all of the conditions required in the buy/sell had been met, including RMT's condition of release of the "Heath" contract. These actions were not calculated to cause damage to Plaintiff, but were intended to aid Ussin and Powers in their business transaction.

## II. Conspiracy

The Montana Supreme Court has held:

> A common law conspiracy occurs in Montana when a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful object for the purpose of harming another which results in damage. We also have established that it is not the conspiracy itself, but the torts committed or the wrong done in the furtherance of the conspiracy that give rise to a conspiracy claim.

*Jones v. Montana University System*, 2007 MT 82, ¶ 44, 337 Mont. 1, 155 P.3d 1247 (internal citations omitted). Therefore, to be actionable, an alleged conspiracy must be toward an unlawful end. *Id.*

Plaintiffs allege Powers, through his agent Ussin, conspired with RMT, its real estate agent Korell, and American Title and Escrow to interfere with the contract of Flagstone to purchase land from RMT. The superstitions, inferences, and paranoia that are the basis for Plaintiffs' arguments do not create genuine issues of material fact. Because the underlying necessary tort, intentional interference with contract by Ussin and Powers cannot be shown, as discussed *supra*, there can be no conspiracy as to Ussin and Powers under this standard.

Conspiracy requires evidence of a common object to be accomplished or a meeting of the minds. Ussin knew nothing of Flagstone Development, LLC, or Lawrence Heath and had never talked to Lawrence Heath. Heath had never heard

of nor talked to Ussin or Powers. Ussin had never been provided any of the Flagstone/RMT documents. Speculation by Plaintiffs about who had what knowledge of the Flagstone/RMT contract is not sufficient to defeat summary judgment.

## CONCLUSION

It is hereby ordered that the Motions for Summary Judgment by Jon Ussin and U Bar S Real Estate [*Doc. 166*] and Nicholas Powers [*Doc. 196*] are **GRANTED**. The Clerk of Court is directed to terminate Jon Ussin and U Bar S Real Estate and Nicholas Powers as Defendants in this matter.

DATED this 21st day of November, 2011.

*/s/ Richard F. Cebull*___________
RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE