IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FLAGSTONE DEVELOPMENT, LLC, an Arizona limited liability company, and LAWRENCE A. HEATH,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　-vs-<br><br>WAYNE JOYNER, JUSTIN JOYNER, as individuals; ROCKY MOUNTAIN TIMBERLANDS, LLC, a Montana limited liability company, WAYNE MARCHWICK, AMERICAN TITLE AND ESCROW, a Montana corporation, FIRST AMERICAN TITLE COMPANY, a California corporation, DEVELOPER FINANCE CORPORATION, a Massachusetts corporation, NICHOLAS POWERS, III, a/k/a NICHOLAS D. POWERS, JAKE KORELL, LANDMARK OF BILLINGS, INC., a Montana corporation, JON USSIN, U BAR S REAL ESTATE, a Montana corporation, and JOHN DOES 11 through 30,<br><br>　　　　　　　　　　　Defendants. | Cause No. CV-08-100-BLG-RFC<br><br><br>**ORDER** |

Currently pending before the Court is a Motion for Summary Judgment by Defendant Developer Finance Corporation (DFC). Plaintiffs oppose said motion.

-1-

Also before the Court is DFC's Motion to Strike Plaintiffs' Response for the reason that the Response was filed 21 days after it was due.

## UNDISPUTED MATERIAL FACTS

Plaintiffs' claims arise from their failed purchase of property known as the 30-Mile Ranch located in Mussellshell County, Montana. Plaintiffs entered into a Buy-Sell Agreement (and addendums) with Rocky Mountain Timberlands in 2007 for the purchase and sale of 30-Mile Ranch. RMT had previously purchased the 30-Mile Ranch with funding from two acquisition loans provided by DFC in the amount of $7.4 million. The 30-Mile Ranch constituted DFC's collateral for RMT's acquisition loans. A condition of the loans was that RMT would develop the 30-Mile Ranch itself.

DFC was contacted by its borrower Wayne Joyner and informed that RMT was considering selling the 30-Mile Ranch to Flagstone. The Buy-Sell between RMT and Flagstone authorized disclosure of information to entities "having interests essential to this Agreement, of any and all information reasonably necessary to consummate the transaction described in this Agreement." DFC Statement of Uncontroverted Facts ¶ 5.

Senior Vice-President of DFC Jeffrey King had previously interacted with Heath in 2005. King shared with Joyner his opinion that Heath lacked experience. Joyners continued negotiations on the Buy-Sell for 30-Mile Ranch.

The case against DFC involves a claim of slander of Heath to Wayne Joyner. For purposes of this motion, the Court is going to assume that DFC made the statements that are allegedly derogatory and defamatory. First, that "[Heath] has no experience in this business." Second, that Heath is "the laughingstock of our company." Even assuming these statements were made, summary judgment is appropriate.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

## ANALYSIS

### I.   Tortious Interference and Conspiracy Claims

DFC joins in the Motion for Summary Judgment filed by the Joyners and RMT [*doc. 190*]. This Court granted summary judgment for Joyners and RMT based upon the determination that Flagstone was not a ready, willing and able buyer [*doc. 272*]. Without Flagstone being a ready, willing and able buyer to the

Buy-Sell, there can be no tortious interference with the agreement or conspiracy to tortiously interfere with the agreement.

## II.   Libel Claim

Libel is "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation." Mont. Code Ann. § 27-1-802 (2009).

Heath admitted during his deposition that there was no publication by DFC, or its agents, that contained disparaging or negative remarks about him:

> Q. What about written e-mails, letters, something published on the internet, anything that you can think of, written statements by a Developer Finance employee, shareholder – not shareholder – employee, director, officer, agent, anyone on Developer Finance's behalf that has written disparaging, negative remarks about you?
>
> A. No.

DFC SUF ¶ 12.

Plaintiffs have provided no specific facts or proof, in the form of a publication authored by anyone at DFC, to support their claim of libel against DFC. Summary Judgment as to the libel claim is appropriate.

## III. Slander Claim

Slander is a false and unprivileged publication other than libel that:

> (3) tends directly to injure a person in respect to the person's office, profession, trade, or business, either by imputing to the person general disqualification in those respects that the office or other occupation peculiarly requires or by imputing something with reference to the person's office, profession, trade, or business that has a natural tendency to lessen its profit; [or]
>
> (5) by natural consequence causes actual damage.

The threshold test is whether the statements, even if false, are capable of bearing a defamatory meaning. *McConkey v. Flathead Electric Co-Op*, 2005 MT 334, ¶ 44, 330 Mont. 48, 125 P.2d 1121. The test for defamation is stringent. *Frigon v. Morrison–Maierle, Inc.* (1988), 233 Mont. 113, 121, 760 P.2d 57, 62, *overruled on separate grounds by Sacco v. High Country Independent Press, Inc.* (1995), 271 Mont. 209, 235, 896 P.2d 411, 426. In *Wainman v. Bowler* (1978), 176 Mont. 91, 576 P.2d 268, the Montana Supreme Court stated:

> Defamation words to be actionable. . . must be of such nature that the court can presume as a matter of law that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided. It is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to jests or banter, so as to affect his feelings.

*Wainman*, 176 Mont. at 96, 576 P.2d at 271.

Claims of defamatory libel may not be based on innuendo or inference, and the allegedly libelous statements must be aimed specifically at the person claiming injury. *Wainman*, 176 Mont. at 94, 576 P.2d at 270 ("If the language is not slanderous per se it cannot be made so by innuendo[.]") (quoting *Keller v. Safeway Stores, Inc.* (1940), 111 Mont. 28, 31–32, 108 P.2d 605, 608).

Nor do sarcastic and hyperbolic statements meet the stringent test for defamation. *Burr v. Winnett Times Pub. Co.* (1927), 80 Mont. 70, 77, 258 P. 242, 244 (concluding statements were only sarcasm and thus not libelous). Statements such as "Management has led the co-op ... into one h[ell] of a mess[,]" are hyperbolic and not actionable. *See Burr*, 80 Mont. at 77, 258 P. at 244.

Finally, a basic principal in the law of defamation is that an expression of opinion generally does not carry a defamatory meaning and is thus not actionable. *Frigon*, 233 Mont. at 121, 760 P.2d at 62.

As stated earlier, for purposes of this motion, the Court is going to assume that DFC made the statements that are allegedly derogatory and defamatory. First, that "[Heath] has no experience in this business." Second, that Heath is "the laughingstock of our company." Those are simply recitations of Mr. King's opinion based on his own observations and interactions with Heath. Although the

statements are unpleasant to Heath, they do not tend to disgrace or degrade Heath or cause him to be shunned or avoided.

The term "laughingstock," is definitely open to interpretation. It can have several different meanings, depending on the context of its use, including being the object of ridicule or the butt of a joke. Wayne Joyner stated that he was left with the impression that King was conveying Heath had no experience in the capital raising business based on the fact that Heath represented himself to King as raising capital for Tres Brooks but had not actually raised any capital in his two years of employment with Mr. Brooks. SUF ¶ 8. Justin Joyner "wasn't really convinced on DFC's statement that Heath didn't have the horsepower to do the deal." SUF ¶ 9. In fact, it was Heath's own conduct in asking Justin Joyner to co-sign on his loan with DFC, which changed Justin Joyner's opinion as to whether Heath was someone who could complete the deal. SUF ¶ 9.

Of importance is the fact that after King's statement, Heath was not shunned, avoided or disgraced. In fact, Joyners continued to do business with Heath and made efforts to complete the Buy-Sell agreement long after the alleged opinion was given. King's opinion of Heath is not slanderous and does nothing more than leave the listener guessing as to Heath's capabilities and/or experience.

### IV. Right to Privacy Claim

In their Second Amended Complaint, Plaintiffs' cite to the Montana Constitution and unidentified federal laws rather than Montana common law in support of their claim for privacy. The right to privacy conferred by the Montana Constitution is limited to actions by state actors. *State v. Long*, 216 Mont. 65, 71, 700 P.2d 153, 157 (1985) ("[I]n accordance with well-established constitutional principles, we hold that the privacy section of the Montana Constitution contemplates privacy invasion by state action only."); *State v. Malkuch*, 2007 MT 60, ¶ 12, 336 Mont. 219, 154 P.3d 558. DFC is not a state actor. Plaintiffs' claim for violation of the right to privacy fails as a matter of law.

### CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that DFC's Motion for Summary Judgment [*doc. 197*] is **GRANTED**. DFC's Motion to Strike [*doc. 241*] is **MOOT**.

DATED this 19th day of December, 2011.

> */s/ Richard F. Cebull*_____
> RICHARD F. CEBULL
> U.S. DISTRICT COURT JUDGE